IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEITH WAYNE EDWARDS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:17-cv-2029-B (BT) |
| | § | |
| LORIE DAVIS, *Director* TDCJ-CID | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Keith Wayne Edwards, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court referred the resulting civil action to the United States magistrate judge, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the petition should be denied.

I.

A jury convicted Petitioner of manslaughter and sentenced him to eleven years in prison. *State of Texas v. Keith Wayne Edwards*, No. F-1216761-K (4th Crim. Dist. Ct., Dallas County, Tex., Aug. 16, 2013). The Fifth District Court of Appeals affirmed his conviction and sentence. *Edwards v. State*, 2015 WL 274716, No. 05-13-01194-CR (Tex. App. – Dallas 2015, pet. ref'd). The Court of Criminal Appeals denied Petitioner's petition for discretionary review. Petitioner also filed a state habeas petition, *Ex parte Edwards*, No. 85,392-01, which the Court of Criminal Appeals denied without written order.

1

Petitioner subsequently filed his federal habeas petition under 28 U.S.C. § 2254, in which he raises the following grounds for relief:

1. He received ineffective assistance of trial counsel when:

    (a) Counsel failed to conduct an independent investigation;

    (b) Counsel failed to subpoena the victim's backpack and the victim's friend Frank Ramirez; and

    (c) Counsel failed to call character witnesses during punishment;

2. The prosecutor committed misconduct;

3. He received ineffective assistance of appellate counsel when:

    (a) Counsel failed to raise ineffective assistance of trial counsel claims;

    (b) Counsel failed to timely file the appeal brief;

    (c) Counsel filed a deficient appeal brief;

4. He was denied counsel during his police interrogation; and

5. His counsels' cumulative errors violated his due process rights.

## II.

Petitioner's conviction and sentence arise out of a violent incident at a DART train station that left Samuel Anderson dead. The appellate court recited the background of this case as follows:

> At approximately 6:30 p.m. on October 24, 2012, Jesus Villanueva was on a DART "green line" train traveling from downtown Dallas toward the Buckner Station. According to Villanueva, two men on the train, Samuel Anderson and Frank Ramirez, were drunk and "being loud." [Petitioner] sat down by the two men but, at some

point, moved and sat down by Villanueva. Two teenaged girls got on the train, and Ramirez "started messing" with the girls by talking to them and "tapping" them. Anderson attempted to make Ramirez stop bothering the girls.

Villanueva testified that [Petitioner] leaned over and said, "watch this" to Villanueva and another passenger. [Petitioner] then moved to a seat by Anderson and Ramirez. Villanueva thought [Petitioner], who was a "pretty big guy," was going to punch one of the men and get off the train. Using his cellphone, Villanueva started recording the activities on the train because he thought something funny was going to happen. The recording made by Villanueva was played for the jury.

The recording shows [Petitioner] sitting behind Anderson and across the aisle, but one seat back, from Ramirez. Anderson and Ramirez were speaking to each other, but neither man was speaking to [Petitioner]. [Petitioner] then turned toward the window of the train. Villanueva testified that [Petitioner] turned, "like nobody would see him," and started "digging" in his bag. It looked to Villanueva as if [Petitioner] was taking something out of his bag. However, Villanueva did not actually see [Petitioner] remove anything from his bag because of an obstruction on the train and the recording does not show [Petitioner] removing anything from his bag.

As the train approached the Lake June Station, [Petitioner] reached out his hand toward Ramirez and started talking to Ramirez. Villanueva could not hear what [Petitioner] said to Ramirez, and the conversation is not audible on the recording. Anderson had his back to, and was not paying attention to, [Petitioner]. At this point, the recording was interrupted when Villanueva received a text.

According to Villanueva, as the train pulled into the Lake June Station, [Petitioner] stood up and started "going back and forth" with Ramirez. The recording shows

3

[Petitioner] and Ramirez talking heatedly to each other, and [Petitioner] then reaching into the pocket of his pants. Villanueva testified, and the recording shows, that [Petitioner] swung his bag at Ramirez. Anderson stood up between the two men and prevented [Petitioner] from hitting Ramirez with the bag. Anderson then chased [Petitioner] out of the door of the train, throwing a punch that did not appear to contact [Petitioner]. Villanueva testified Anderson and [Petitioner] continued to "go back and forth," with [Petitioner] standing outside the train. Anderson was telling [Petitioner] to "back off" and kicking at [Petitioner]. The recording shows Anderson, wearing an orange backpack and with a cigarette in one hand, kicking and throwing punches out of the door of the train. Villanueva testified it appeared [Petitioner] pulled Anderson off the train. Villanueva looked out of the train and saw Anderson laying on the ground, bleeding from his neck. According to Villanueva, the first act of aggression between the men was [Petitioner's] swinging his bag at Ramirez. In Villanueva's opinion, although Anderson was drunk, he did not hurt anybody and nothing happened that justified him being killed.

Evelyn Lazo exited the train at the Lake June Station and saw a man get off the train. The man looked a little aggressive, "like he was almost ready to fight." Lazo saw the man swing his arm up, and she thought he was trying to punch someone inside the train in the face. She then saw blood spew out of Anderson's neck. Anderson fell on the ground, and the other man ran off.

A recording from the Lake June Station platform was played for the jury. The platform recording shows [Petitioner] exiting the train, but immediately turning around. [Petitioner] stepped in and out of the door of the train and appeared to be yelling. [Petitioner] then swung his arm, and Anderson fell out of the train. A pool of blood appeared around Anderson. [Petitioner] immediately ran toward the back of the train.

[Petitioner] testified that on October 24, 2012, he spent the day looking for a job. He boarded the "green line"

4

train at the Martin Luther King Station and intended to ride the train to the Buckner Station. When he boarded the train, he noticed a "commotion." The train was crowded and he sat down without realizing the person next to him, Ramirez, was creating the problem. According to [Petitioner], Ramirez and Anderson were drinking out of a bottle, "talking bad," and calling people names, such as the "n-word" and the "b-word." After a "stop or so," [Petitioner] decided to change seats. When [Petitioner] decided to move seats, neither Anderson nor Ramirez had said anything to him. [Petitioner] sat down across the aisle from Villanueva. According to [Petitioner], the recording made by Villanueva did not capture everything that happened on the train.

At some point, [Petitioner] decided to check whether he had left something in his first seat. When he did, Ramirez's foot kicked him and Ramirez said something. While evidently gesturing for the jury, [Petitioner] stated he took his bag and "did that" after Ramirez's foot kicked him. Anderson opened his orange backpack, showed [Petitioner] a small caliber pistol, and said "I'll shoot your black ass." [Petitioner] then returned to the seat by Villanueva. According to [Petitioner], he said, "what's this" to Villanueva because he did not know what he "done got into."

As the train approached the Lake June Station, [Petitioner] moved back to a seat by Ramirez and Anderson. [Petitioner] admitted he then initiated contact with Ramirez, probably because of something Ramirez said. [Petitioner] does not remember what he said to Ramirez. [Petitioner] swung his bag at Ramirez, and immediately got off the train at the Lake June Station. [Petitioner] realized he had left his chicken dinner behind and attempted to re-board the train. Anderson started kicking and swinging at [Petitioner], preventing him from getting back on the train. According to [Petitioner], Anderson had given his backpack to Ramirez. [Petitioner] saw Anderson reaching for the backpack and thought Anderson was going to get the gun. [Petitioner] took a piece of broken glass that he had

5

> found on the train from his pocket and jabbed Anderson with it. [Petitioner] knew he made contact with Anderson.
>
> [Petitioner] admitted his conduct was reckless, but denied he intended to harm or kill Anderson. [Petitioner] thought his action was reasonable and necessary because he was in fear for his life. However, [Petitioner] admitted he was provoked by Anderson calling him names and kicking him and that maybe he jabbed at Anderson because he was angry. [Petitioner] ran away because he believed Ramirez had the backpack, did not know what Ramirez intended to do, and was in fear for his life. When [Petitioner] was interviewed by the police following his apprehension, he did not tell the police that Anderson had a gun.
>
> Anderson's left external and internal carotid arteries were severed by [Petitioner's] jab with the piece of broken glass, and he died following surgery. [Petitioner] was indicted for murder. The jury convicted [Petitioner] of the lesser included offense of manslaughter and sentenced him to eleven years' imprisonment.

*Edwards*, 2015 WL 274716 at *1-2.

## III.

### 1. Procedural Bar

Respondent argues the following claims are procedurally barred because Petitioner failed to raise the claims in state court: (1) Petitioner received ineffective assistance of counsel when counsel failed to call character witness during the punishment phase of trial (claim 1(c)); (2) the State committed prosecutorial misconduct (claim 2); and (3) defense counsels' cumulative errors denied Petitioner due process (claim 5).

6

A petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b). This requires a petitioner to present his claims, in a procedurally proper manner, to the highest available state court for review. *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). A Texas prisoner must present his claims to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985).

Here, Petitioner failed to present the three claims identified by Respondent to the Texas Court of Criminal Appeals by filing these claims in his petition for discretionary review, or in his state habeas petition. Petitioner therefore failed to exhaust his state remedies. If Petitioner were to file another state habeas petition to exhaust these claims, it would be dismissed under Texas's abuse-of-the-writ doctrine because he was required, but failed, to include all grounds for relief in his first state petition. *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Failure to exhaust state remedies is generally a procedural bar to federal habeas review. A federal court, however, may excuse the bar if the petitioner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Ries v. Quarterman*, 522 F.3d

517, 523-24 (5th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Petitioner argues he did not raise these claims in state court due to ineffective assistance of counsel. Under the Supreme Court's decisions in *Trevino v. Thaler,* 569 U.S. 413 (2013), and *Martinez v. Ryan,* 566 U.S. 1 (2012), ineffective assistance of trial counsel may establish cause for failing to raise a claim in state court. This exception applies only to ineffective assistance of trial counsel claims and does not extend to ineffective assistance of appellate counsel or other claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2064-75 (2017). Here, Petitioner's claims 1(c) and 5 allege ineffective assistance of trial counsel. The Court will therefore consider these claims on the merits.

As for Petitioner's claim that the State committed prosecutorial misconduct (claim 2), Petitioner has stated no cause for his failure to present this claim to the Court of Criminal Appeals. He also has failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he is actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him

8

considering the new evidence. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has failed to meet this high standard. Accordingly, the procedural default doctrine bars federal habeas relief on this claim.

2. **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254, provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct

9

governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

### 3. Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Trial Counsel

Petitioner claims trial counsel did not conduct an independent investigation, but instead relied on the facts and law presented by the prosecutor. On state habeas review, defense counsel submitted an affidavit responding to Petitioner's claims. Counsel stated:

> I personally investigated the Murder case against Mr. Edwards by among other things contacting and/or attempting to contact and talking to witnesses that were listed on the police report. I reviewed all video footages from crime scene and Henderson Kitchen restaurant from where Mr. Edwards proceeded to the DART station.

(ECF No. 21-16 at 3.) Petitioner has submitted no evidence that there is a reasonable probability that a further investigation would have changed the outcome of the trial.

Petitioner also claims trial counsel: (1) failed to subpoena the victim's friend, Frank Ramirez, or obtain a statement from him; (2) failed to find other witnesses who could support his claim of self-defense, and (3) failed to call character witnesses at punishment. These claims are without merit. Petitioner has submitted no evidence that Frank Ramirez would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("Hypothetical or theoretical testimony will not justify the issuance of a writ.") (citation omitted). Further, defense counsel stated it was

11

trial strategy not to call Frank Ramirez as a witness. (ECF No. 21-16 at 3.) Petitioner has also failed to submit any evidence that there were witnesses who would have supported his self-defense claim, or who would have provided favorable character testimony for the defense.

Petitioner also alleges counsel should have subpoenaed the victim's backpack, which Petitioner claimed contained a gun and a bottle of alcohol. Officer Livia, however, testified that the victim's backpack was not found at the crime scene.[1] (ECF No. 20-4 at 162-64.) Petitioner has submitted no evidence that the backpack would have contained evidence helpful to the defense. Further, defense counsel submitted an affidavit on state habeas review stating it was trial strategy not to subpoena the backpack, "to argue it showed the state did not want the jury to know what was inside it, possibly drugs. It was the defense theory that the victim was drunk and under the influence of drugs at the time he attacked defendant." (ECF No. 21-16 at 3.) Petitioner has failed to establish ineffective assistance of counsel.

### B.  Appellate Counsel

Petitioner argues appellate counsel was ineffective when counsel: (1) did not raise his ineffective assistance of trial counsel claims on appeal; (2) did not timely file his appeal; (3) filed an inadequate brief; and (4) filed his appeal

---

[1]  Although Petitioner cites Officer Livia's testimony to argue that the victim's backpack was later recovered, Livia actually testified that it was Petitioner's backpack that was recovered.  (ECF No. 20-4 at 185-86.)

12

without resolving the fact that parts of the video-tape evidence and trial record were missing.

Although appellate counsel did not timely file the appellate brief, the court granted counsel's motion to accept the late-filed brief, and the brief was deemed timely. (*See* www.txcourts.gov/5thcoa, file date Aug. 5, 2014.) Petitioner has failed to show he was prejudiced by counsel's actions.

Appellate counsel also informed the appellate court that certain records were missing, including one video, parts of two other videos, and part of the jury charge. (*Id.*, file date July 30, 2014.) Counsel requested that the record be supplemented with this evidence. The court granted the motion in part, and later informed Petitioner that the record was complete. (*Id.*, file dates Aug. 5, 2014 and Sept. 2, 2014.) Petitioner has failed to establish that his counsel was ineffective.

Finally, Petitioner claims appellate counsel failed to raise his ineffective assistance of trial counsel claims and failed to file an adequate brief. As discussed above, Petitioner's trial counsel claims are without merit. Counsel was not required to make meritless arguments. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). This claim should be denied.

### C. Cumulative Error

Petitioner claims the cumulative effect of trial and appellate counsels' errors violated his constitutional rights. Petitioner, however, has failed to

13

establish that he received ineffective assistance of trial or appellate counsel. This claim should be denied.

### 4. Denial of Counsel

Petitioner claims he was denied counsel during his police interrogation. He states he was questioned at the DART police station, and that he asked three times whether he needed an attorney, but he was not provided with counsel.

A suspect who is questioned in a custodial interrogation has the right to consult with an attorney and to have counsel present during questioning. *See Miranda v. Arizona*, 384 U.S. 436, 469–473 (1966). To invoke his right to an attorney, however, a suspect "must unambiguously request counsel." *Davis v. United States*, 512 U.S. 452, 459 (1994). A statement such as "maybe I should talk to a lawyer" is not a clear assertion of a request for counsel. *Id.* at 462; *see also United States v. Posado-Rios*, 158 F.3d 832-867 (5th Cir. 1998) (stating a suspect's statement that she "might have to get a lawyer, huh?" was not a clear request for counsel).

Here, Petitioner states he asked officers whether he needed an attorney. Petitioner's inquiries were not a clear request for counsel. Further, Petitioner has not identified any statements that he made during the interrogation that were later used against him at trial. Petitioner's claim thus should be denied.

14

**5.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally-protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings.

### III.

For the foregoing reasons, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be denied with prejudice for failure to make a substantial showing of the denial of a federal right.

Signed November 21, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).